Argued and submitted August 21, reversed and remanded with
instructions to reinstate the referee's opinion November 16, 1981

In the Matter of the Compensation of
Gary W. Hunter and Michael LeRoy, Claimants.

## MULTNOMAH COUNTY,
*Petitioner,*

*v.*

HUNTER et al,
*Respondents.*

(Nos. 79-4980, 79-10169, 79,10606 CA A20559)

635 P2d 1371

Paul G. Mackey, Deputy County Counsel, Portland, argued the cause for petitioner. With him on the brief was John B. Leahy, County Counsel, Multnomah County Counsel, Portland.

Daniel C. Dziuba, Portland, argued the cause for respondents Gary Hunter and Michael Leroy. With him on the brief were Pozzi, Wilson, Atchison, Kahn & O'Leary, Keith E. Tichenor and Robert K. Udziela, Portland.

Darrell E. Bewley, Appellate Counsel, State Accident Insurance Fund, Salem, argued the cause and filed the brief for respondent State Accident Insurance Fund Corporation.

Before Gillette, Presiding Judge, and Roberts and Young, Judges.

GILLETTE, P. J.

## GILLETTE, P. J.

The issue in this workers' compensation case is which of two governmental entities, the State or Multnomah County (County), is the employer, for Workers' Compensation Act purposes, of two court reporters (claimants). The referee held that the State was responsible because the claimants were under the direction of the circuit court; the State Accident Insurance Fund (SAIF) was ordered to provide coverage. The Workers' Compensation Board reversed, holding that the County was responsible. The County appeals. We reverse.

Claimants each were employed as official court reporters in the Multnomah County Circuit Court at the time they suffered job-related injuries. Compensability is not an issue. Both the County and SAIF denied coverage, each maintaining that the other was responsible. The County has served as the paying agent under ORS 656.307 pending the outcome of this dispute.

ORS 656.005(16) defines "employer:"

"* * * * *

"(16) 'Employer' means any person, including receiver, administrator, executor or trustee, and the state, state agencies, counties, municipal corporations, school districts and other public corporations or political subdivisions, who contracts to pay a remuneration for and secures the right to direct and control the services of any person."

The claimants are hired and paid by the County, which has limited authority to control their salary. ORS 8.372.[1] The County provides the work place and the office

---

[1] ORS 8.372 provides:

"(1) The 'governing body of a county,' as used in ORS 8.372 to 8.387, means the county court or board of county commissioners of such county.

"(2) The annual salary of each official reporter for the circuit court shall be not less than $7,200. The annual salary shall be payable in monthly instalments throughout the year as county salaries are paid.

"(3) In each judicial district composed of only one county, whenever, in the judgment of the governing body of such county, the minimum annual salary established by this section is not commensurate with the character and amount of service performed by the official reporter or reporters in the district, the governing body of the county may pay out of the funds of the county such additional amounts as will properly compensate such reporter or reporters for the services performed."

furniture. It negotiates the labor contract with the reporters, but the record does not reveal the extent of judicial involvement, if any, in the labor negotiation process.

The parties agree that the basic test for determining an employment relationship for workers' compensation consists of two elements: 1) the existence of a contract for hire; and 2) the employer's right to control the employe's services. A dispute has arisen here because the County bargains with and pays court reporters, while the State, through its circuit court judges, controls and benefits from their services.

The County argues that control is the most decisive of the two factors for determining employment. It cites *Harris v. State Ind. Acc. Comm.,* 191 Or 254, 271-72, 230 P2d 175 (1951), where the Supreme Court stated:

"The payment of wages is considered the least conclusive of the tests for determining whether the relation of employer and employee exists. It is not decisive where it is shown that the employee was actually under the control of another person during the progress of the work. * * *
"* * * * *

"The principle to be deduced from the authorities is that, when the remaining evidence shows beyond dispute that the alleged employee is subject to the control and direction of one person, evidence that his wages were paid by another should be disregarded. * * *" (Citations omitted.)

The State responds that control is decisive only in determining "whether a worker is a subject worker or a non-subject worker, *e.g.,* an independent contractor." It likens the situation at hand to that of a "borrowed servant." The "borrowed servant" doctrine applies where an employe in an existing employment relationship is loaned by the original employer to a special employer. In that situation, the general employer remains liable for workers' compensation unless 1) the special employer contracts with the employe, 2) the work being done is that of the special employe, and 3) the special employer has the right to control the details of the employe's work. *See* 1B Larson, *Workmen's Compensation Law,* § 48 (1980). Here, the State argues, the County is the general employer which lends court reporters to the State; because the State does not contract to hire the employe, the County remains liable.

The borrowed servant analysis presupposes that an employment relationship already exists between the putative general employer and the employe upon which to base workers' compensation coverage. 2 Larson, *Workmen's Compensation Law* 8-327, § 48.10 states, in part:

> "What gives the lent-employee cases their special character, however, is the fact that they begin, not with an unknown relation, but with an existing employment relation. * * * The only presumption is the continuance of the general employment, which is taken for granted as the beginning point of any lent-employee problem."

What is a *presupposition* for the purposes of the borrowed servant concept is *the issue* here. Far from taking employment by the County "for granted," we are here inquiring as to whether it exists. The borrowed servant analysis does not help. Court reporting is a hybrid, not satisfying the employment requirements completely for either the State or the County.

Unlike the Board, we find the County's position persuasive for several reasons. First, *Harris* holds that, as between control and payment of wages, control is the decisive factor for determining employment. Here, the State's right to control court reporters is undisputed. They are appointed by the individual judges in whose courts they serve, and they hold their offices at the pleasure of the appointing judges. ORS 8.310(1). They are officers of the court, ORS 8.310(2), and are subject to qualifications established by the Oregon Supreme Court. ORS 8.310(1). Finally, state judges are authorized to direct and control their work. ORS 8.330 and 8.340.[2] This right of control itself, under *Harris,* seems determinative as to workers' compensation liability.

The right to control is also important from a policy standpoint. The judges of the State of Oregon benefit directly from the services of the court reporters. They not

---

[2] Although there is a bargaining agreement between Multnomah County and the Association of Court Reporters that deals with vacations, sick leave, medical and dental insurance, retirement benefits, office space, furnishings and wages, the agreement states that, "[c]ourt reporters are hired by, work for and serve at the pleasure of, the presiding Circuit Court Judge." Also, to obtain leave from work other than sick or vacation leave, the reporter must obtain permission, not from a county official but from the circuit court judge. Moreover, workers' compensation coverage is not one of the benefits listed in the agreement.

only perform reporting duties in court, but are also the judges' official secretaries. *See* ORS 8.330. The State benefits most directly from court reporters' services, and it should be responsible for providing their workers' compensation insurance.

In addition, it is not entirely clear that the County is completely liable for paying court reporters. There is a contract of hire between counties and court reporters; yet, the legislature allocates funds from the state's general fund to help defray the costs to the County of administering state courts. *See* Or Laws 1979, ch 536. While this is by no means a dollar for dollar reimbursement, it amounts to the State assuming partial responsibility for payment of court reporter's salaries.[3]

Most importantly, ORS 8.310(4) states:

"(4) Each such reporter shall be deemed a county employee for purposes of the provisions of [the Public Employees Retirement Act of 1953] and [the Retirement Plan for Multnomah County] *only.*" (Emphasis supplied.)

Because the legislature did not list workers' compensation as one of the purposes for which court reporters are deemed to be County employes, they should be treated otherwise as employes of the State.[4]

---

[3] Although it is not binding on this court, an opinion of the Attorney General, No. 7942 (August 18, 1980), determined that staffs of circuit and district court judges are employees of the state for purposes of protection under the Tort Claims Act, which provides that "every public body is liable for its torts or those of its officers, employes and agents * * *." ORS 30.265. The Attorney General concluded:

"The fact that staff salaries are paid by the counties is irrelevant since those salaries are paid only by virtue of funding statutes and not by virtue of any real control over the employees by the counties."

[4] The State points out that, according to an opinion of the Attorney General, No. 7942, *supra,* n 3, court reporters are not counted as state employes for purposes of ORS 240.185 which sets a maximum number of state employees. That statute does not purport to determine whether members of any group are State employes. Its purpose is to limit the number of *certain types* of state employes. Among those individuals excluded from the purview of the statute, in addition to court reporters, are, the Governor, Secretary of State, the State Treasurer, the members of the Supreme Court and the Legislative Assembly, personnel who administer unemployment insurance benefit programs of the Employment Division of the Department of Human Resources, and other enumerated administrative personnel. Presumably, the State would not argue that all the individuals listed were meant to be excluded from SAIF workers' compensation coverage.

The order of the Board is reversed and remanded with instructions to reinstate the referee's decision.