Argued and submitted September 24, affirmed November 21, 1984

In the Matter of the Compensation
of Keith A. Shine, Claimant.

NEWPORT SEAFOOD et al,
*Petitioners,*

*v.*

SHINE et al,
*Respondents.*

(82-02910, 82-02911; CA A30794)

691 P2d 132

Kevin L. Mannix, Portland, argued the cause and filed the brief for petitioners. With him on the brief was Lindsay, Hart, Neil & Weigler, Portland.

Edward J. Harri, Albany, argued the cause for respondent

Keith A. Shine. On the brief were Richard T. Kropp, and Emmons, Kyle, Kropp, Kryger & Alexander, P.C., Albany.

Thomas J. Mortland, Portland, argued the cause for respondents Intercontinental Motor Lines and Mission Insurance. With him on the brief was Breathouwer & Gilman, Portland.

Before Warden, Presiding Judge, and Van Hoomissen and Young, Judges.

YOUNG, J.

## YOUNG, J.

In this workers' compensation case, Newport Seafood Company (NSC), and its insurer appeal from an order of the Board that held that NSC was claimant's employer at the time of his low back injury. The Board reversed a referee's decision that Intercontinental Motor Lines (IML) was claimant's employer at the time of the injury. Responsibility is the sole issue. We affirm the Board.

NSC is a seafood processing company located in Newport. IML is a common carrier. In February, 1982, an IML truck bound for California stopped at NSC and loaded 2,000 pounds of seafood, which finished off the truck load. NSC's shipment was going to its customers in San Diego. About 25 miles south of Newport, the truck went off the road and upset. The driver telephoned Affleck, IML's Portland dispatcher, who called Sherman, IML's owner. Sherman authorized Affleck to do whatever was necessary to salvage the shipment. Affleck contacted Bittler and Manewal, part owners and managers of NSC,[1] at Manewal's wedding reception. Affleck knew Bittler and Manewal from previous business contacts. He solicited their help to put a crew together and assured them that IML would pay all the expenses.

Manewal and Bittler announced at the reception that an IML truck was off the road and that the freight would be unloaded the next day. Some of those present at the reception worked for NSC; everyone there was advised of the availability of the work. Claimant was employed by NSC as a crab and fish buyer. He was present at the reception and decided to work. On February 7, several persons, including claimant, assembled at NSC's offices and then proceeded to the truck. On arrival, the men met with other workers and began unloading the truck. Several of the workers were not NSC employes. Claimant injured his back while unloading the truck. He reported the injury that evening after returning to the NSC office.

■    The referee and the Board framed their analyses in terms of the loaned-servant doctrine. In concluding that, at

---

[1] At the relevant time Bittler and Manewal each owned five percent of the NSC stock.

the time of his injury, claimant was IML's employe, the referee reasoned:

"Whether the lent-servant *[sic]* doctrine applies in this case depends upon whether Manewal and/or Bittler were acting as officers on behalf of NSC (the alleged general employer) or instead, were acting in their individual capacities either as employees' agents for IML or as an independent contractor. If Manewal and/or Bittler acted as officers of NSC in obtaining claimant's services, the lent-servant *[sic]* doctrine would apply. If Manewal and Bittler were acting only as individuals authorized by IML to hire people for a salvage operation or were acting as an independent contractor the doctrine would not apply. There is evidence in this case weighing both ways.

"It appears that IML's dispatcher intended for Manewal and Bittler to act in their individual capacities to obtain labor and equipment for an IML salvage operation. The dispatcher felt that he had authority to direct and control that salvage operation, even though he did not actually do so. Manewal understood that the operation was to be IML's, as did Bittler. Assistance with the project was solicited at a private wedding reception from both NSC employees and non-NSC employees. Normal NSC procedures were not followed in carrying out the project (*e.g.* the work was performed off of NSC premises, hourly employees did not punch a time clock, regular wage rates were not paid, taxes were not withheld from wages distributed, work on the project was voluntary and not mandatory even for NSC employees and the salvage operation was not a part of NSC's usual business). Furthermore, a number of individuals worked on the salvage operation who were not NSC employees, and the services of some of those individuals were solicited by someone other than Manewal or Bittler. Finally, IML had the primary interest in salvaging seafood from the overturned truck.

"* * * * *

"Although it is far from clear, I believe the greater weight of evidence indicates that Manewal and Bittler acted in their individual capacities and not as officers of NSC. * * *

"I conclude that Manewal and Bittler contracted, either on their own behalf or as agents for IML, to pay claimant for his services in salvaging the seafood on its overturned truck. I believe that it can be implied *[sic]* that claimant was generally aware that Manewal and Bittler were acting individually, notwithstanding the fact that he initially anticipated being

paid by NSC. Claimant recognized that his participation in the salvage operation was voluntary and that he did not follow normal NSC procedures including punching in and out and working on NSC's premises."

The Board disagreed with the referee's analysis.

"* * * We find that there is insufficient evidence to prove that Manewal and Bittler were acting independently and not as officers of NSC. It is true that Manewal and Bittler testified that they were paid as individuals for the work they did on the salvage operation and that they believed they were operating in their individual capacities. However, NSC's business good will was the motivating factor for their involvement. Further, they used NSC facilities as a meeting place and used NSC equipment in the salvage operation. NSC, not Manewal and Bittler, billed IML for all the time and equipment expended in the salvage operation. Accordingly, we find that Manewal and Bittler were acting in their capacity as officers of NSC. Therefore, the lent-servant *[sic]* doctrine should be applied.

"* * * * *

"We find that NSC * * * has failed to prove anything which would amount to an employment agreement between claimant and IML. '[T]he basic test for determining an employment relationship for workers' compensation consists of two elements: 1) the existence of a contract for hire; and (2) the employer's right to control...' There was no contract for hire between claimant and IML because claimant's subjective belief was that he was an employee of NSC when he was injured. As Larson states: 'An employee, for compensation purposes, cannot have an employer thrust upon him against his will or without his knowledge.' Accordingly, we find that claimant was an employee of NSC when he was injured, therefore NSC is responsible for claimant's compensable injury."

In resolving the issue, the Board correctly set forth a two-step analysis. The first inquiry is whether the loaned-servant doctrine applies between NSC and IML. If it does, then a determination must be made as to whether claimant, during the time at issue, was an employe of NSC or IML.

On *de novo* review, we agree with the Board that there is persuasive evidence that Manewal and Bittler were acting as officers of NSC. The facts recited by the Board include NSC's business goodwill, the use of NSC facilities as a

meeting place and the use of NSC equipment in the salvage operation. Moreover, NSC—not Manewal and Bittler—billed IML for both the time and the equipment used in the salvage operation. In the light of those facts, the fact that Manewal and Bittler were paid by IML's insurance carrier is not persuasive. Having determined from the evidence that the loaned-servant doctrine applies, we turn to its application.

In *Multnomah County v. Hunter,* 54 Or App 718, 721, 635 P2d 1371 (1981), we approved Larson's formulation of the loaned-servant doctrine:

> "When a general employer lends an employee to a special employer, the special employer becomes liable for workmen's compensation only if
>
> "(a)   the employee has made a contract of hire, express or implied, with the special employer;
>
> "(b)   the work being done is essentially that of the special employer; and
>
> "(c)   the special employer has the right to control the details of the work." 1C Larson, *Workmen's Compensation Law* 8-317, § 48.00.

■     The Board concluded, and we agree, that NSC failed to prove anything that would amount to a "contract of hire, express or implied" between claimant and IML. Unlike the common law rules developed primarily for the purpose of *respondeat superior,* a determination of an employment relationship in Workers' Compensation Law focuses first on the claimant's perspective:

> "In compensation law, the spotlight must now be turned upon the employee, for the first question of all is: did he make a contract of hire with the special employer? If this question cannot be answered 'yes' the investigation is closed, and there is no need to go on into tests of relative control and the like.
>
> "This must necessarily be so, since the employee loses certain rights along with those he gains when he strikes up a new employment relation." 1C Larson, *Workmen's Compensation Law,* 8-319, §48.10 (1982).

Claimant testified that he assumed he was being paid by NSC. It was only after he had reported his injury that he was made aware that he was to be paid by IML. There is no probative evidence that claimant expressly or impliedly entered into a contract of employment with IML.

Affirmed.