Argued and submitted April 17, 1991, reversed; referee's order reinstated March 25, reconsideration denied July 15, petition for review denied September 29, 1992
(314 Or 392)

In the Matter of the Compensation of
the Beneficiaries of
Donald E. Thomas, Deceased, Claimant.

Mary L. THOMAS,
Beneficiary of Donald E. Thomas, Deceased, Claimant,
*Petitioner,*

*v.*

A-1 SANDBLASTING AND STEAM CLEANING CO.,
Ross Brothers Construction Company
and SAIF Corporation,
*Respondents.*

(87-17184, 88-02638; CA A66235)

828 P2d 471

Donald O. Tarlow, Newberg, argued the cause for petitioner. With him on the brief was Brown, Tarlow & Berry, P.C., Newberg.

David L. Runner, Assistant Attorney General, Salem, argued the cause for respondents A-1 Sandblasting and

Steam Cleaning Co. and SAIF Corporation. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Jerald P. Keene, Portland, argued the cause for respondents Ross Brothers Construction Company and SAIF Corporation. With him on the brief was Roberts, Reinisch, MacKenzie, Healey & Wilson, P.C., Portland.

Before Richardson, Presiding Judge, and Joseph, Chief Judge,* and Deits, Judge.

DEITS, J.

---

* Joseph, C. J., *vice* Newman, J., deceased.

**DEITS, J.**

In this workers' compensation case, petitioner is the beneficiary of a deceased worker (decedent), who died while working under a subcontract between Ross Brothers Construction Company (Ross) and A-1 Sandblasting and Steam Cleaning Co. (A-1). SAIF insures both companies. The referee set aside SAIF's denial on behalf of A-1. The Workers' Compensation Board reversed, finding that Ross is the responsible employer and holding that petitioner is not entitled to Oregon benefits. Compensability is not disputed. The issues on review are whether A-1 or Ross was decedent's employer at the time of his death in California and, only if Ross was his employer, whether petitioner is entitled to benefits under ORS 656.126(1) by reason of decedent's death while working temporarily out-of-state. Because we hold that A-1 is the responsible employer, we reverse.

For approximately 23 years Ross, a general contractor in Oregon, has subcontracted with A-1, an Oregon business, to do most of Ross' painting work. Ross is licensed to do business in California and had a contract there to disassemble a bridge, remove it to a maintenance yard and clean and paint it. In August, 1987, Ross had moved the bridge to the maintenance yard, but it still needed to be cleaned and painted. Ross contacted the president of A-1 and requested that A-1 subcontract to paint the bridge. However, because A-1 was not licensed in California, they agreed that A-1 would do the project, but Ross would put A-1's employees on its payroll and pay them directly. A-1 would bill Ross for the cost of transportation, equipment rental and supplies, plus 10 percent.

Ross provided A-1 the specifications for the project. A-1 then obtained all of the necessary equipment and supplies and worked with the State of California to obtain approval of the paint. One of A-1's officers, Cornett, arranged for decedent to work with him on the California job. Decedent had been employed by A-1 for at least 10 years. During the previous three or four years, he had not worked for any other employer, although he had done minor free-lance work when A-1 did not have sufficient work. When he was not working, he drew unemployment compensation chargeable against A-1. Decedent had never worked for Ross and never applied to

work for it. His first contact with Ross was enroute to California when, at A-1's direction, he and Cornett delivered their W-4 forms and a copy of the union pay scale to the Ross offices. A Ross employee then joined them to work on the project.

At the job site, decedent and Cornett worked without supervision and made most decisions jointly. Cornett kept the records, made all necessary contacts with A-1, decided what hours they would work and reported hours worked to Ross. The Ross employee, who was sent to make sure that job costs and time worked were reported accurately, apparently worked under the direction of A-1's employees. While working on the project, decedent suffered a fatal heart attack.

Claimant, as decedent's beneficiary, filed for Oregon workers' compensation death benefits. At a hearing on compensability, the referee found that A-1 was decedent's employer. He set aside SAIF's denial on behalf of A-1 and upheld SAIF's denial on behalf of Ross. On review, the Board adopted the referee's findings of fact, with one minor addition. It concluded, however, that decedent was an employee of Ross under the loaned-servant doctrine and that he was a California worker at the time of his death. Therefore, claimant was not entitled to Oregon workers' compensation benefits.

■       Claimant argues that the Board erred in applying the loaned-servant doctrine to this case. Alternatively, she contends that, assuming the doctrine is applicable here, the Board misapplied it. In *Multnomah County v. Hunter*, 54 Or App 718, 721, 635 P2d 1371 (1981), we explained the applicability of the loaned-servant doctrine:

> "The [loaned-servant] doctrine applies where an employe in an existing employment relationship is loaned by the original employer to a special employer."

Here, it is undisputed that A-1 was decedent's general employer. Because of the California license problems, A-1 agreed to allow Ross to put decedent on its payroll as its employee. We conclude that Ross was a special employer and, therefore, the loaned-servant doctrine applies. *Newport Seafood v. Shine*, 71 Or App 119, 123, 691 P2d 132 (1984).

■　After it is determined that a general employer has loaned an employee to another employer, it is necessary to decide which is responsible for the injury. As stated in 1C Larson *Workmen's Compensation Law* 8-317, § 48.00 (1991):

"When a general employer lends an employee to a special employer, the special employer becomes liable for workmen's compensation only if

"(a)　the employee has made a contract of hire, express or implied, with the special employer;

"(b)　the work being done is essentially that of the special employer; and

"(c)　the special employer has the right to control the details of the work."

It is unnecessary for us to decide whether there was an implied contract of hire between decedent and Ross, or whether the work being done was essentially that of the "special employer," Ross, because we conclude that, under the Board's findings, the third criteria was not satisfied. The Board adopted the referee's findings:

"A-1 sent to California two skilled individuals who were capable of working within the contract parameters without much upper-level supervision. [Cornett] was serving as a corporate officer. Though he tended to physically do the more menial, less-skilled, tasks while [on the project], he was, in fact, the person who physically communicated with [decedent] and arranged for him to work in California on the bridge project. [Cornett and decedent] worked together on all decisions, though [Cornett] is the one who decided when they would go to work in the morning, he kept track of all the hours worked by all three workers, maintained custody of the job specifications, and kept a diary of the job."

The order also reveals that decedent performed his job in his usual manner. A-1 instructed him to report initially to A-1 offices to pick up and transport the supplies and equipment necessary for the job. A-1 supplied everything that he needed to complete the project. Cornett made all decisions about work hours, and he and decedent jointly decided the details of how to perform the work. The part of the project that Ross did itself was complete, and none of its supervisory personnel were still on the site. Although Cornett reported to Ross about hours worked for payroll purposes and other

minor details, he also maintained regular contact with A-1 while on the project. However, there were no findings that the one Ross employee who accompanied the painters "to be sure that they were working" had any supervisory function.[1] A-1 maintained its usual extent of control over the details of decedent's work, even though he had been "loaned" to Ross. We hold that A-1, as the general employer of decedent, remained liable for worker's compensation benefits during the time that decedent was "loaned" to Ross.

Reversed; referee's order reinstated.

---

[1] The employee sent to the project by Ross was the 20-year-old nephew of one of the owners. He was not skilled and made none of the decisions. The Board found that he was sent to make sure that "they were working and not sitting on their butts."